**UNITED STATES of America**

v.

**H. William JOHNS, Appellant.**

**No. 88–1249.**

United States Court of Appeals, Third Circuit.

Argued July 18, 1988.

Decided Oct. 7, 1988.

Edward F. Borden (Argued), Philadelphia, Pa., for appellant.

William B. Carr, Jr. (Argued), U.S. Attys. Office, Philadelphia, Pa., for appellee.

Before HIGGINBOTHAM, BECKER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Appellant has been charged in a 56-count indictment that alleges, *inter alia*, mail fraud in violation of 18 U.S.C. § 1341 (1982). He appeals from the district court's denial of his several motions to dismiss the indictment in which he had alleged various abuses of the grand jury process. 688 F.Supp. 1017. (E.D.Pa.1988) Prior to the consideration of the merits of any of these claims, however, we have examined the threshold question of whether the interlocutory order from which Appellant seeks relief fulfills the requirements of the collateral order rule and, therefore, is properly before us at this time. We conclude that the order does not meet those requirements and, accordingly, we will dismiss this appeal.

### I.

This appeal arises from a present criminal proceeding in which appellant, H. William Johns, is being tried for participation in a bribery and kickback scheme. During 1983, Walter Rubel, in-house counsel for Acme Markets, Inc. ("Acme"), received information that Johns, Acme's Director of Packaging, Equipment and Supplies Procurement, was receiving kickbacks from some of Acme's vendors. Acme brought that information, together with the results of its own further investigation, to the United States Attorney's Office.

After an extensive criminal investigation, the matter was presented to a grand jury for the Eastern District of Pennsylvania, which returned a 56-count indictment charging Johns with violations of 18 U.S.C. § 1341 (1982) (mail fraud), 18 U.S.C. § 1952 (1982) (use of interstate facility in aid of commercial bribery) and 18 U.S.C. § 2314 (1982) (interstate transportation of securities taken by fraud). The indictment charged that while Johns was employed by Acme, he accepted commercial bribes from outside vendors with whom he had dealt at Acme. It further charged that these vendors made commission payments to three corporations: Pak–All, Alma Trading and Garo Service and that these corporations thereafter made payments to Johns.[1]

---

1. Grand jury subpoenas were issued to several financial institutions for the records of Alma Trading, Pak–All, and Garo Service, each of which had been identified as being used by Johns to receive kickbacks. Records of these companies were also obtained through grand jury subpoenas served on Johns's accountant. Additionally, the United States Postal Inspector issued "mail covers"—"the process by which a record is made of any data appearing on the outside cover of any class [of mail] matter," 39 C.F.R. § 233.3 (1987)—in order to ascertain the identities of individuals or entities that might be making payments to Johns. The results of the mail cover, as well as the government's analysis of the bank records, were forwarded to Rubel for him to investigate the nature of the relationship that each of the named corporations had

Johns filed several pre-trial motions seeking dismissal of the indictment.[2] In the first of these motions, he contended that forty-six of the indictment's fifty-six counts should be dismissed because the government failed to present exculpatory evidence to the grand jury, which the government had obtained from Johns, demonstrating that Acme had suffered no financial loss due to Johns's alleged scheme. In the second, he argued that the entire indictment should be dismissed because the government violated Fed.R.Crim.P. 6(e) by disclosing information that had been gathered via grand jury subpoenas to Acme's in-house counsel. In his third motion, Johns asserted that there was a lack of sufficient evidence presented to the grand jury to support the indictment. In his final motion, Johns sought to strike two paragraphs of the indictment, which alleged mail fraud, that he contended were invalid because they were predicated upon a theory—that the mail fraud statute criminalized an employee's civil breach of a fiduciary duty—that was rejected by the Supreme Court. See McNally v. U.S., —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987).

After a two-day evidentiary hearing, the district court denied each of these motions. Thereafter, Johns timely filed a notice of appeal to this Court from the denial of his motions and also filed a motion to stay the trial proceedings pending the outcome of this appeal, which the district court granted.

As part of its response to Johns's appeal, the government filed a motion to dismiss for lack of jurisdiction and, prior to consideration of the substance of Johns's contentions, we have reviewed the government's challenge to our jurisdiction. Upon that review, we conclude that, at this time, we are without jurisdiction to reach the merits of Johns's appeal.

## II.

The government contends that Johns's appeal is not ripe because the order denying the motion to dismiss is not a final judgment within the meaning of this Court's grant of authority, see 28 U.S.C. § 1291 (1982); see also, DiBella v. United States, 369 U.S. 121, 124, 82 S.Ct. 654, 656, 7 L.Ed.2d 614 (1962), and does not fall into the narrow class of exceptions that enable a party to appeal an interlocutory decision prior to a final judgment of conviction. See Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981). It notes, correctly, that to come within that limited class of exceptions, the interlocutory decision of the trial court must, at a minimum, meet the three following conditions: (1) it "must conclusively determine the disputed question"; (2) it must "resolve an important issue completely separate from the merits of the action"; and (3) it must "be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (footnote omitted). The government argues that the issues raised by Johns are neither collateral to, nor separable from, the principal issue of guilt that will be resolved at trial.

Johns asserts that his case falls within one of the exceptions, namely the "collateral order" rule established by Cohen v.

---

with Acme. Based upon information that Acme obtained from the mail cover and the government's analysis of bank and accounting records, Acme began to withhold payments from vendors that were suspected of having paid kickbacks to Johns. These vendors subsequently settled with Acme and, shortly thereafter, cooperated with the government's investigation.

2. Johns filed a total of five pre-trial motions for dismissal of the indictment. The district court ruled on four of these motions and those decisions are the subject of this appeal. At Johns's request, the district court deferred reaching a decision on the fifth motion, which sought the exclusion of evidence on grounds of undue prejudice, until the time of trial.

*Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *see also, Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). He contends that, as a result of the Supreme Court's decision in *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), the decisions for which he seeks review cannot be considered if he is convicted and, therefore, interlocutory review is mandated. We do not agree.

As the starting point for our inquiry, we note that the contentions that Johns raises are distinguishable from the narrowly defined class of pre-trial orders in criminal prosecutions that the Supreme Court has explicitly determined meet the requirements of the collateral order rule for interlocutory appeals. In those cases, the Supreme Court applied the collateral order rule to instances in which " 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.' " *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 266, 102 S.Ct. 3081, 3083, 73 L.Ed.2d 754 (1982) (quoting *United States v. MacDonald*, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978)). *See Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (motion to reduce bail); *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (motion to dismiss an indictment on double jeopardy grounds); *Helstoski v. Meanor*, 442 U.S. 500, 91 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (motion to dismiss an indictment on Speech or Debate grounds).

The order appealed from in this case lacks "the critical characteristics that make orders denying bail reduction or refusing to dismiss on double jeopardy grounds or Speech or Debate grounds immediately appealable." *Flanagan v. United States*, 465 U.S. 259, 266, 104 S.Ct. 1051, 1055, 79 L.Ed.2d 288 (1984). We conclude, therefore, that none of those exceptions provides a basis for Johns to obtain the interlocutory relief that he seeks. Thus, the only question that we must decide is whether an additional exception to the final judgment rule has been created by the application of the "harmless error" analysis in *Mechanik*, thereby making Johns's claims " 'effectively unreviewable on appeal from a final judgment.' " *Flanagan*, 465 U.S. at 265, 104 S.Ct. at 1055 (quoting *Coopers & Lybrand* 437 U.S. at 468, 98 S.Ct. at 2458).

### III.

In *Mechanik*, the Supreme Court considered whether a violation of Fed.R.Crim. P. 6(d) could be the basis for the dismissal of an indictment on post-conviction appeal. The defendants in that case had been convicted of both conspiracy and substantive drug offenses. At trial, the defendants discovered that two witnesses had been present, testifying together, during the grand jury proceeding in contravention of Rule 6(d). The defendants moved to dismiss the indictment on that ground, and the district court denied their motion. The defendants were subsequently convicted and appealed on the basis of the violation of Rule 6(d). The Court of Appeals for the Fourth Circuit agreed that the simultaneous presence of the grand jury witnesses had violated Rule 6(d), and held that this violation had tainted the conspiracy portion of the indictment. It therefore reversed the defendants' conspiracy conviction and remanded to the district court for its dismissal of the conspiracy portion of the indictment, notwithstanding the absence of a factual finding that the defendants had been prejudiced by the violation. *United States v. Mechanik*, 735 F.2d 136 (4th Cir. 1984). The Supreme Court reversed that holding and reinstated the convictions. It held that the purpose of Rule 6(d) was to protect a defendant from having "to defend against a charge for which there was no probable cause to believe him guilty." *Mechanik*, 475 U.S. at 70, 106 S.Ct. at 942. It stated, however, that

the petit jury's subsequent guilty verdict means not only that there was probable

cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, *any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.*

*Id.* (emphasis added) (footnote omitted). Moreover, the Court noted that

societal costs of reversal and retrial are an acceptable and often necessary consequence when an error in the first proceeding has deprived a defendant of a fair determination of the issue of guilt or innocence. But the balance of interest tips decidedly the other way when an error has had *no effect on the outcome of the trial.*

*Id.* at 72, 106 S.Ct. at 943 (emphasis added).

Johns argues that, pursuant to *Mechanik*'s harmless error analysis, upon his conviction he will be denied review of his claims of grand jury abuse, since a court could find "no simple way after the verdict to restore [him] to the position in which he would have been had the indictment been dismissed before trial." *Id.* at 71, 106 S.Ct. at 942. Johns concludes, therefore, that the logical extension of *Mechanik* makes unreviewable on post-conviction *any* alleged irregularity that occurred during the grand jury's charging proceedings.

In support of his argument, he relies upon two decisions of the Court of Appeals for the Ninth Circuit that have read *Mechanik* broadly to foreclose post-conviction review not only of violations of Rule 6(d), but also of other assertions of error in the charging process. *See United States v. Benjamin,* 812 F.2d 548 (9th Cir.1987); *United States v. Dederich,* 825 F.2d 1317 (9th Cir.1987). Johns argues that these cases stand for the proposition that "the Supreme Court's decision foreclosing post-verdict appellate review operated to make many pretrial grand jury issues appealable

as 'collateral orders'" under *Cohen.* Appellant's Brief at 9.

In *Benjamin,* the appellants contended that the government had violated Fed.R. Crim.P. 6(e)(2) by its disclosure of matters that had been before the grand jury. The appellate court held that, even in the context of a violation of the grand jury's secrecy provision, it "would not be free to avoid a harmless error analysis[,]" or to find *Mechanik*'s concern for societal costs of retrial inapplicable. 812 F.2d at 552. The appellate court acknowledged that there was a distinction between the more technical Rule 6(d) violation that the Supreme Court addressed in *Mechanik,* which implicates the grand jury's determination of probable cause, and a violation of Rule 6(e), which attacks the "fundamental fairness" of the proceeding. Notwithstanding that distinction, however, the appellate court concluded that "[the] appellant's claims of violation of Rule 6(e) ... [were] sufficiently aimed at the grand jury's charging process that they [fell] within the ambit of *Mechanik....* Therefore, [the] claim of irregularities ha[d] been rendered effectively unreviewable after final judgment." *Id.* at 553.

In our view, the distinction between assertions of error that concern Rule 6(d) and assertions of error that concern Rule 6(e), or other such claims that raise issues that go to the fundamental fairness of the grand jury proceeding, does suggest a different outcome in the determination of interlocutory review. Rule 6(d) was enacted, in part, to ensure that a grand jury is not subject to undue influence in its decision to indict. *Mechanik,* 475 U.S. at 70, 106 S.Ct. at 942. In contrast, Rule 6(e) was designed to "codif[y] the traditional rule of grand jury secrecy." *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 425, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983). "[A] violation of Rule 6(e) is not rendered harmless simply because the defendant is convicted; at least in some instances, the more egregious the violation of Rule 6(e), the

more *likely* it becomes that the petit jury will convict." *United States v. Midland Asphalt Corp.*, 840 F.2d 1040, 1046 (2d Cir.1988) (denial of a motion to dismiss an indictment based on an allegation of improper disclosure of grand jury matters does not qualify for interlocutory appeal, but may be presented in an appeal following a final judgment on the merits), *cert. granted* — U.S. ——, 108 S.Ct. 2869, 101 L.Ed.2d 905 (1988). "[T]he petit jury's verdict [will only] render[ ] harmless any conceivable error in the *charging decision* that might have flowed from the violation," *Mechanik*, 475 U.S. at 73, 106 S.Ct. at 943 (emphasis added). Since "[t]he grand jury's charging decision in this case did not flow from the claimed violation of Rule 6(e)[,] ... *Mechanik* is inapposite." *Benjamin*, 812 F.2d at 556 (Thompson, J., dissenting).

In our view, *Mechanik* was not intended to preclude the post-conviction review of assertions of errors that implicate more than merely technical deficiencies. *Cf. United States v. Taylor*, 798 F.2d 1337, 1340 (10th Cir.1986) (appellant's allegations of Rule 6(e) violations are not of the Rule 6(d) technical variety, but attack the "fundamental fairness" of the criminal proceeding and thus would be justiciable after final judgment and are not subject to the *Mechanik* harmless error analysis). For that reason, we reject the analyses of *Benjamin* and *Dederich* and, accordingly, we reject Johns's assertion that his claims must be reviewed prior to final judgment.

We do not read *Mechanik* as creating another exception to the final judgment rule, but rather agree with the view expressed by the Court of Appeals for the Tenth Circuit that *Mechanik* is "carefully crafted along very narrow lines." *Taylor*, 798 F.2d at 1340. *See also United States v. Kilpatrick*, 821 F.2d 1456, 1466 (10th Cir.1987), *aff'd in part, sub nom., Bank of Nova Scotia v. U.S.*, — U.S. ——, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). The grand jury abuses alleged in the present case—prosecutorial misconduct in the presentation of evidence, violation of the grand jury secrecy provision and the presentation of evidence in reliance upon a theory of criminality that had been rejected by the Supreme Court[3]—are different from the violation that was at issue in *Mechanik*, which "at worst, was technical, and, at most, could have affected only the grand jury's determination of probable cause." *Taylor*, 798 F.2d at 1340. The case before us raises the question of whether the government violated the defendant's "right to fundamental fairness." *Id.* In such cases, a balancing of the societal costs of retrial, which *Mechanik* stated "[were] far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings," 475 U.S. at 73, 106 S.Ct. at 943, against the societal interest in deterring

---

**3.** Each of Johns's claims is distinguishable from the type of alleged error that the Supreme Court considered in *Mechanik*. First on this point, it is noteworthy that none of his assertions is predicated upon Rule 6(d), which is the specific rule that the Supreme Court considered in *Mechanik*. His contention concerning the government's failure to present exculpatory evidence to the grand jury, for example, presents the issue of prosecutorial misconduct which, in prior cases, has been appealed post-conviction, *see, e.g., United States v. Ciambrone*, 601 F.2d 616 (2d Cir.1979), and we see nothing in *Mechanik* that overrules those holdings. Another of Johns's contentions alleges specifically a violation of Rule 6(e) which, as we have noted above, is of a fundamentally different character than the Rule 6(d) violation addressed by the Supreme Court. Even Johns's assertion that the evidence presented to the grand jury was insufficient to indict, which, at first blush, appears to be the type of challenge that *Mechanik* would hold to be negated by a conviction, is distinguishable. Johns asserts that claim in concert with his contention that the government's indictment relies upon a theory of criminality that has been rejected by the Supreme Court. His argument is not that the evidence as a whole does not support the handing down of an indictment, but rather that once the evidence that pertains to the invalid theory is removed, the remaining evidence is insufficient to support the indictment. In this light, it is evident that his challenge to the sufficiency of the evidence is actually a further challenge to the validity of the substance of the charges presented to the grand jury. That allegation implicates much more than the sufficiency of the "probable cause" determination that *Mechanik* has held subject to harmless error on post-conviction review and, in our view, does not fall within the ambit of the Supreme Court's holding.

the type of abuses that are here alleged, does not weigh in favor of the application of "harmless error" analysis. "A petit jury determination of guilt will not moot these issues because they go beyond the question of whether the grand jury had sufficient evidence upon which to return an indictment[,]" *Taylor*, 798 F.2d at 1340, and implicate issues that go to "the fundamental fairness of the criminal proceedings." *Id.*

## IV. *Conclusion*

In light of the long-standing principle that disfavors piecemeal appeals, *Hollywood Motor Car Co.*, 458 U.S. at 264–65, 102 S.Ct. at 3082–83, we read *Mechanik* as establishing a limited principle and not as creating an additional exception to the final judgment rule. *Cf. United States v. The LaRouche Campaign*, 829 F.2d 250, 254 (1st Cir.1987) ("[W]e cannot conclude that the Supreme Court intended the effect of *Mechanik* to be to render denials of motions alleging unfairness in the grand jury process routinely immediately appealable."). Further, it is inconceivable to us that the Supreme Court intended *Mechanik* to preclude appellate courts from exercising post-conviction review of the denial of motions that have alleged fundamental error in the grand jury process. Accordingly, we hold that there is no jurisdictional basis for the interlocutory review of the order denying Johns's motions to dismiss the indictment, and we will, therefore, dismiss this appeal.[4]

---

**4.** Pursuant to Fed.R.App.P. 41(a), we will direct the clerk to issue the mandate forthwith.